UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BURUJI KASHAMU, | ) |
| | ) |
| Plaintiff, | ) |
| | ) CASE NO. 15 C 3159 |
| v. | ) |
| | ) |
| ERIC HOLDER, Attorney General of the United States | ) |
| in his official capacity only; THE UNITED STATES | ) JUDGE COLEMAN |
| DEPARTMENT OF JUSTICE; JAMES COMEY, | ) MAGISTRATE ROWLAND |
| Director of the Federal Bureau of Investigation in his | ) |
| official capacity only; THE FEDERAL BUREAU OF | ) |
| INVESTIGATION; JEH JOHNSON, Secretary of the | ) |
| United States Department of Homeland Security; and | ) |
| THE UNITED STATES DEPARTMENT OF | ) |
| HOMELAND SECURITY, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION
AND TEMPORARY RESTRAINING ORDER**

Plaintiff, Buruji Kashamu (hereinafter "Plaintiff" or "Kashamu"), through his undersigned attorneys, files this Memorandum of Law in Support of his Motion for Preliminary Injunction. Plaintiff seeks a preliminary injunction enjoining Defendants (hereinafter collectively "the United States"), and its employees and agents, from all efforts to abduct Kashamu from Nigeria or any other foreign country to transport him directly to the United States and/or from all efforts to abduct Kashamu from any foreign county to another foreign country for the purpose of transporting him to the United States. In the absence of an agreement by the United States not to abduct Kashamu while this Motion is being considered by the Court, Plaintiff seeks a temporary restraining order granting the above-mentioned relief while the Court is considering this Motion. In support thereof, Plaintiff

1

states as follows:

As set forth below, Plaintiff Kashamu has received information leading him to believe that he will be subject to an imminent illegal abduction in Nigeria by United States and Nigerian law enforcement officials designed to transport him directly or indirectly to the United States to stand trial on pending alleged drug offenses without going through the extradition procedures set forth in the extradition treaty between the United States and Nigeria and Nigerian law (as incorporated by said treaty).

Kashamu has recently been democratically elected a Senator in Nigeria's recent national elections and plans to be sworn in on or about May 29, 2015. Kashamu's belief that he will be subject to imminent illegal abduction is based on specific information that he has received indicating that his political opponents are conspiring with specific individuals in the United States government to illegally abduct him and transfer him to the United States to ensure that he does not take his democratically elected position as Senator.

Kashamu alleges that said abduction would constitute an unlawful seizure and arrest in violation of 22 USC §2291(c)(referred to herein as "the Mansfield Act") and Fed. Crim. Proc. R. 4(c)(2). In addition, Kashamu alleges that said abduction would be in violation of the right to be free from unlawful seizure and arrest and from the deprivation of life and liberty without due process of law, as set forth in the extradition treaty between the United States and Nigeria, and as set forth under the United States Constitution.

As set forth below, many of the facts set forth herein are supported by Affidavit evidence which Plaintiff will file after seeking a determination from the Court as to whether said evidence should be filed under seal.

# FACTS

Plaintiff Kashamu is a citizen of the Federal Republic of Nigeria. On or about May 21, 1998, Kashamu's name was introduced into an existing indictment in case no. 94 CR 172 which was pending in the United States District Court for the Northern District of Illinois against several other individuals alleging a conspiracy to import and distribute heroin in violation of 21 U.S.C. §963. The indictment remains pending.

From approximately 1998 through 2003, the United States attempted to extradite Kashamu from the United Kingdom on at least two occasions, but, after full and fair hearings, Kashamu was released by the courts in the United Kingdom. The United Kingdom ultimately refused to extradite Kashamu on the grounds that the identification evidence submitted against Kashamu was incredible and valueless. In support of its conclusion, the United Kingdom found that Kashamu had a brother who bore a "striking resemblance" to him and that the brother was the member of the alleged conspiracy which formed the basis for the indictment. When the extradition proceedings ended on January 10, 2003, Kashamu was released. *United States v. Kashamu*, at *9-10 (Bow Street Magistrates' Court Jan. 10 2003) (a copy of which is attached hereto as Exhibit 1).

At some point after his release, Kashamu went to Nigeria. However, to the best of Kashamu's knowledge (and as stated by the Seventh Circuit's opinion in *In re Kashamu*, 769 F.3d 490, 493 (7th Cir. 2014)), the United States has not tried to extradite Kashamu from Nigeria, even thought the United States has an extradition treaty with Nigeria.

Based on the information received by Kashamu, Kashamu believes that employees working for the following agencies are involved in his imminent illegal abduction: the Department of Homeland Security ("DHS"), the Federal Bureau of Investigation ("FBI"), and the Department of

Justice ("DOJ").

On or about March 29, 2015, it was announced that Kashamu was elected Senator of the Federal Republic of Nigeria from the Ogun East Senatorial District of Ogun State of Nigeria. Kashamu ran as member of the People's Democratic Party (PDP). At that time, the rival party, the All Progressives Congress (APC) won the office of the Presidency and the majority of the Senate and other offices. See list of newly-elected Senate members of National Assembly attached hereto as Exhibit 2.

Kashamu is currently in great fear that he is subject to imminent abduction from Nigeria for the purpose of bringing him to the United States. Kashamu has received information indicating that he was subject to imminent abduction and arrest by Nigerian law enforcement officials working with and under the direction of United States law enforcement officials to ensure that Kashamu would be arrested and forced to stand trial on the charges pending against him in the United States. Kashamu has received information indicating that he was being abducted because it would benefit his political rivals for him not take his seat in the Nigerian Senate and that such abduction would be used to get around having to follow the due process required to extradite Kashamu under Nigeria's extradition treaty with the United States and under Nigerian law (as incorporated in the extradition treaty). For example, Kashamu has received information, including on April 1, 2015 and April 4, 2015, that lead him to believe that the Department of Homeland Security, through one or more of its employees, and the FBI, through one or more of its employees, have been conspiring with Nigerian law enforcement officials to directly abduct Kashamu for the purpose of his forcible transportation to the United States for trial.

**ARGUMENT**

Plaintiff requests that the Court enter a preliminary injunction pursuant to Fed. R. Civ. P. Rule 65 ordering the United States to cease any attempt to unlawfully abduct Plaintiff from Nigeria or any other country for purposes of transporting him directly or indirectly to the United States. "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and the injunction is in the public interest." See *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). In determining whether to grant the preliminary injunction, the court may use a sliding scale approach in weighing these factors – i.e. "'the more likely it is the plaintiff will succeed on the merits, the less the balance of irreparable harms need weigh towards its side; the less likely it is the plaintiff will succeed, the more the balance need weigh toward its side.'" *Planned Parenthood of Wis. Inc. v. Van Hollen*, 738 F.3d 786, 794 (7th Cir. 2013) (quoting *Kraft Foods Group Brands LLC v. Cracker Barrel old Country Store, Inc.*, 735 F.3d 735, 740 (7th Cir. 2013); see also *Protamek Indus., LTD v. Equitrac Corp.*, 300 F. 3d 808, 811 (7th Cir. 2002); *Ty Inc. v. Jones Group*, 237 F.3d 891, 895 (7th Cir. 2001).

To the extent the United States will not agree to the entry of a temporary restraining order while the Court considers the motion for preliminary injunction, Plaintiff requests that the Court issue a temporary restraining order. The standards for issuing temporary restraining orders are identical to the standards for preliminary injunctions." *Long v. Bd. of Educ.*, 167 F. Supp. 2d 988, 990 (N.D. Ill. 2001).

As discussed below, under this standard, Plaintiffs are entitled to injunctive relief.

5

I. **Plaintiff is Likely to Succeed on the Merits of his Claim that his Abduction Would Violate Federal and International Law**

A. **Kashamu's Abduction Would Violate the Mansfield Act**

The threatened abduction would violate the Mansfield Act. The Mansfield Act (22 USC 2291(c) provides, in part, that:

(c) Participation in foreign police actions.

(1) Prohibition on effecting an arrest. No officer or employee of the United States may directly effect an arrest in any foreign country as part of any foreign police action with respect to narcotics control efforts, notwithstanding any other provision of law.

Thus, under the plain meaning of the statute, United States officers and employees do not have the authority to seize Kashamu in Nigeria or any other foreign country. This plain meaning is reinforced by the Mansfield Amendment's legislative history. The Senate Foreign Relations Committee Report stated that "[i]t is the Committee's intent that 'police action,' as used in this provision is meant to prohibit U.S. narcotics agents abroad from engaging in actions involving the use of force and actions involving the arrest of foreign nationals - whether unilaterally (acting on their own) or as members of teams involving agents or officials of other foreign governments." Internal Security Assistance and Arms Control Act, S. 2662, 94th Cong., Sec. 55 (2d Sess. 1976) (hereinafter "Mansfield Amendment Senate Report").[1]

---

[1] A number of other statements in the legislative history confirm Congress' intent to bar unilateral law enforcement actions by the United States in foreign territory related to narcotics control efforts. See Report by Senator Mansfield, Winds of Change: Evolving Relations and Interests in Southeast Asia, S. Rep. No. 382-38, 94th Cong., 1st Sess. 9 at 9-10(daily ed. Oct. 1975) (Police actions, including local drug enforcement, are functions of indigenous governments. If there is a U.S. role, it should be limited to the exchange of information and intelligence with appropriate Thai or other officials.); 121 CONG. REC. 33894 at 38994-95 (daily ed. Dec. 8, 1975) (statement of Sen. Mansfield) (We cannot enlist the cooperation of others in the cause of protecting basic human rights and at the same time espouse a doctrine of law and order at any price. And . . . we cannot have it both ways – and then refuse to accept any responsibility when things go sour.); 122

Plaintiff acknowledges that the Supreme Court has held that, at least under certain circumstances, a person's illegal abduction from a foreign county does not bar that person from being tried in the United States for crimes for which they were lawfully indicted. See *United States v. Alvarez-Machain*, 504 U.S. 655, 662 (1992), *Ker v. Illinois*, 119 U.S. 436, 443-444 (1886); but see *United States v. Rausher*, 119 U.S. 407 (1886). However, Plaintiff is *not presently* asking for the Court to dismiss any criminal charges against Kashamu if he is illegally abducted or to bar his prosecution. **Kashamu is asking the Court to enjoin the threatened illegal abduction because it violates the Mansfield Amendment and other applicable law.** In *United States v. Bridgewater*, 175 F. Supp. 2d 141, 145 (D.P.R. 2001), the district court stated, in part, that "The Mansfield Act regulates government action prescriptively . . ." As such, based on the plain language of the Mansfield Act, the threatened abduction at issue in this case would violate the Mansfield Act and the Court should use its power to prescriptively enjoin such action.

**B.  Kashamu's Abduction Would Violate Fed. Rules Crim. Proc. R. 4**.

To the best of Kashamu's knowledge, and according the docket sheet for Case No. 94 CR 172 on PACER, an arrest warrant was issued by Judge Norgle under the name Buruji Kashamu in 1998. At the time, Criminal Rule 4(c)(2) provided that an arrest warrant may be executed within the jurisdiction of the United States. Subsequent to the issuance of the warrant, in 2002, Rule 4 was amended to allow execution of an arrest warrant anywhere else a federal statute authorizes and arrest. According to the Advisory Committee notes on the 2002 amendments, the amendment was made to reflect the recent enactment of the Military Extraterritorial Jurisdiction Act that permits arrests

---

CONG. REC. 2592 (1976) (statement of Sen. Mansfield) ("[L]aw enforcement actions in foreign countries are – and should remain – the responsibility of local governments.")

of certain military and Department of Defense personnel overseas.

The abduction of Kashamu would violate Fed. Rules Crim. Proc. R. 4(c)(2) because the abduction would occur outside the jurisdiction of the United States. Moreover, the abudction would not fall within the Military Extraterritorial Jurisdiction Act.

In *Sosa v. Alvarez-Machain*, 331 F.3d 604, 622 & n.22 (9th Cir. 2003) (en banc), *rev'd on other grounds,* 542 U.S. 692 (2004), the Ninth Circuit (en banc) concluded that the plaintiff in that case had a meritorious claim against DEA agents that abducted him under the Federal Torts Claim Act because the DEA agents did not have authority to arrest him outside the United States, based at least in part on Fed. Rules Crim. Proc. R. 4(c)(2). In *Sosa v. Alvarez-Machain*, 542 U.S. 692, 711-712, 735-736 (2004), the Supreme Court reversed the Ninth Circuit's decision on the grounds that the Federal Torts Claim Act did not apply to actions occurring outside the United States. However, the court did not find that the DEA agents had lawful authority to arrest the plaintiff in that case under any federal law. *Id.* at 699, 735-736 & n. 25-26. As such, the threatened abduction at issue in this case would violate federal law and the Court should enjoin such action.[2]

    **C.**    **Kashamu's Abduction Would Deprive Kashamu of the Procedural and Legal Protections Required Under the United States/Nigeria Extradition Treaty**

The threatened abduction would deprive Kashamu of the procedural and legal protections required under the extradition treaty between the United States and Nigeria (and the Nigerian

---

[2]It is also probable that, *in the absence of lawful authority to arrest Kashamu*, Kashamu's abduction could violate federal criminal laws. For example, the Federal Kidnapping Act provides in relevant part that a crime is committed when a person "unlawfully . . . kidnaps, abducts or carries away and holds for ransom or reward or otherwise any person . . . when . . . the person is willfully transported in interstate or foreign commerce . . . or the offender travels in interstate or foreign commerce . . . in furtherance of the commission of the offense. 18 USC sec. 1201(a)(1). Conspiracy to engage in such activity is also a crime. 18 USC sec. 1201(c).

Extradition Act incorporated therein). The United States has an extradition treaty with Nigeria. *See United States v. Kashamu,* 653 F.3d 679, 682 (7th Cir. 2011) (citing source) (based on Plaintiff's research a true and correct copy of the treaty is attached hereto as Exhibit 3).

In *United States v. Alvarez-Machain*, 504 U.S. at 662-670, the United States Supreme Court held that the extradition treaty between the United States and Mexico did not prohibit abductions. The decision in Alvarez was based on the Supreme Court's conclusion that the United States/Mexico treaty did not preclude abductions. However, the United States and Nigeria have certain provisions in the extradition treaty between the United Sates and Nigeria that differ in significant ways from the provisions in the extradition treaty between the United States and Mexico.

For example, Article 8 of the treaty between the United States and Nigeria has a provision in it that was not in the treaty between the United States and Mexico. Article 8 provides that:

> The extradition of fugitive criminals under the provisions of this Treaty shall be carried out in the United States and in the territory of His Britannic Majesty respectively, in conformity with the laws regulating extradition for the time being in force in the territory from which the surrender of the fugitive criminal is claimed.

Thus, the treaty incorporates Nigerian law regulating extraditions in Nigeria.

Nigeria has enacted the Nigerian Extradition Act, which regulates extradition. (Based on Plaintiff's research, a true and correct copy of the Extradition Act is attached hereto as Exhibit 4). This law was enacted to "make more comprehensive provisions for extradition of fugitive offenders for Nigeria." In addition, the law sets forth specific procedures before an alleged fugitive criminal of any country may be surrendered which are antithetical to abduction. For instance, section 5 of the Nigerian Extradition Act states that "Every fugitive criminal of a country to which this Act applies shall, subject to the provisions of this Act, be liable to be arrested and surrendered in the manner provided by this Act . . ." In addition, section 6(1) of the Act states that a request for the surrender

of the alleged fugitive criminal be made in writing to the Attorney-General by a diplomatic representative or consular officer of that country and shall be accompanied by a duly authenticated warrant of arrest or certificate of conviction issued in that country. The Act also include multiple due process protections such as hearings at which evidence must be presented and the opportunity to contest such evidence, prior to any surrender of the alleged fugitive criminal.

In light of differences between the treaties, and the fact that Plaintiff is not presently seeking dismissal of the indictment against him, Plaintiff contends that this case is distinguishable from *United States v. Alvarez-Machain*, 504 U.S. at 662-670. As such, the threatened abduction at issue in this case would violate the requisite treaty by depriving Kashamu of the procedural and legal protections of the treaty and the Court should enjoin such action.

D. **Kashamu's Abduction Would Violate Important Principles of International Law**

The abduction violates important principles of international law. In *Alvarez*, 504 U.S. at 669, the Supreme Court acknowledged, without deciding, that the abduction of a foreign national by agents of the United States may be "'shocking'" and that "it may be in violation of general international principles." In *Sosa v. Alvarez-Machain*, 542 U.S. 692, 697 (2004), the Court held that a foreign national who was abducted could not sue for damages under the federal torts claims act and the alien tort statute. However, as discussed above, the Supreme Court's decision with respect to the federal torts claims act was based on its conclusion that the federal torts claims act did not apply to actions outside the United States and the Court did not reach the issue of whether the federal employees had committed an unlawful arrest (as the Ninth Circuit Court of Appeals sitting on banc had found that they had done). *Id*. At 711-712, 735-736. Moreover, the Court's decision with respect to the alien tort statute was based on the limited nature of the type of violations of international law that could

be brought under that law. *Id.* at 711-737. In addition, the Court did not consider the cross-border feature of the abduction. *Id.* at 735 & n. 24.

Kashamu contends that his cross-border abduction would violate important principles of international law because it would be a blatant violation of the territorial integrity of another state. Article 2, paragraph 4 of the U.N. Charter provides, "All members shall refrain in their international relations from the threat or use of force against the territorial integrity or political independence of any state . . . ." U.N. Charter art. 2, para. 4. This principle appears to prohibit abductions under customary international law.

In addition, The International Covenant on Civil and Political Rights ("ICCPR") precludes arbitrary arrest or detention. ICCPR, G.A. Res. 2200A(XXI), art. 9, U.N. Doc. A/6316 (March 23, 1976), available at http://www2.ohchr.org/english/. The Universal Declaration of Human Rights similarly prohibits "arbitrary arrest, detention or exile" and provides for fair and public hearings. Universal Declaration of Human Rights, G.A. Res. 217 (III) A, arts. 9-10, U.N. Doc. A/RES/217(III)(Dec. 10, 1948), available at http://www.un.org/en/documents/udhr; *see general* discussion in *Sosa v. Alvarez-Machain*, 542 U.S. at 730-737. As such, in light of the arguments set forth herein, the threatened abduction at issue in this case would violate important principles of international law and the Court should enjoin such action.

### D. Kashamu's Abduction Would Violate Important Principles of the United States Constitution

The Fifth Amendment to the United States Constitution, provides, in part, that no person "shall be deprived of life, liberty, or property, without due process of law . . ." In *Boumediene v. Bush*, 553 U.S. 723, 732 (2008), the Supreme Court extended constitutional habeas rights to non-American detainees being held at the U.S. military base in Guantanamo Bay, Cuba. *See also* M.

CHERIF BASSIOUNI, INTERNATIONAL EXTRADITION 294 (5th ed. 2007)(arguing that constitutional limitations should be extended to apply to non-citizens because they are "not only designed to protect U.S. citizens from such violations of the Constitution by U.S. agents, but are also intended to ensure that those acting in the name of the United States conform to constitutional standards, irrespective of where they may be"); Tung Yin, *Procedural Due Process to Determine "Enemy Combatant" Status in the War on Terrorism*, 73 TENN. L. REV. 351, note 118, at 414 (2006) (arguing that nonresident aliens "have a cognizable liberty interest in being free from confinement").

Although, as discussed above, the Supreme Court has held that, under certain circumstances, the process clause does not bar the trial and/or conviction of a person who was illegally abducted from a foreign county for crimes for which they were lawfully indicted. See *United States v. Alvarez-Machain*, 504 U.S. 655, 662 (1992), *Ker v. Illinois*, 119 U.S. 436, 443-444 (1886). However, as also discussed above, Plaintiff is *not presently* asking for the Court to dismiss any criminal charges against Kashamu or to bar his prosecution. **Kashamu is asking the Court to enjoin the threatened illegal abduction because the abduction itself would violate his right not to be deprived of life or liberty without due process.** In light of the above-mentioned procedural protections set forth in the relevant Extradition Treaty, and federal and international law, and the risk to Kashamu's life inherent in any such abduction, said abduction would violate important principles of substantive and procedural due process. As such, the threatened abduction at issue in this case would violate important principles of the United States Constitution and the Court should enjoin such action.

II.  **Plaintiff is Likely to Suffer Irreparable Harm in the Absence of Preliminary Relief**

Kashamu contends that it is fairly obvious that he will suffer irreparable harm in the absence of preliminary relief. If the United States attempts to abduct Kashamu, his right to be free from such abduction will be violated. Moreover, as indicated in *Sosa v. Alvarez-Machain*, 542 U.S. at 697 (rejecting tort claims for illegal abduction under federal torts claims act and alien tort statute), if he is abducted, Kashamu will have no adequate remedy at law for the violation of his rights.

Moreover, there is a strong risk that Kashamu could be killed or seriously injured if the United States attempts to abduct him from Nigeria. Kashamu's death or serious injury are surely irreparable. As such, there is a substantial likelihood that the threatened abduction at issue in this case would cause irreparable harm and the Court should enjoin such action.

### III. The Balance of Equities and the Public Interest Favor the Issuance of a Preliminary Induction

As set forth above, all Kashamu is asking is for the United States to follow the procedures required for extradition in the extradition treaty between Nigeria and the United States. However, the United States has not even requested Kashamu's extradition. Moreover, an attempted abduction would be illegal and would subject Kashamu to irreparable harm, including possible loss of life and/or serious injury. Thus, the balance of equities strongly favors the entry of injunctive relief.

For much the same reasons, the public interest favors issuance of injunctive relief. The public interest is served by the orderly extradition of criminal defendants. If the United States is allowed to abduct an elected Senator of a foreign nation, citizens (including elected officials of the United States) would not be free from abduction from foreign governments that issued arrest warrants or indicted such officials.

Wherefore, Kashamu prays that the Court grant him the following relief against the United

States: That the Court enter a preliminary injunction enjoining the United States, and its employees and agents, from all efforts to abduct Kashamu from Nigeria or any other foreign country to transport him directly to the United States; and/or from all efforts to abduct Kashamu from any foreign county to another foreign country for the purpose of transporting him to the United States.

                        Respectfully submitted,

                        <u>Robert R. Cohen</u>
                        Robert R. Cohen

Robert R. Cohen, ARDC No. 6193698
rcohen@frankelandcohen.com
Scott J. Frankel, ARDC No. 6195429
sfrankel@frankelandcohen.com
Frankel & Cohen
Attorneys for Plaintiff
53 W. Jackson Blvd., Suite 1615
Chicago, Illinois 60604
(312) 759-9600

Date: April 20, 2015