UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BURUJI KASHAMU, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 15-cv-3159 |
| ) | |
| LORETTA LYNCH, Attorney General of the ) | Judge Charles Norgle |
| United States in her official capacity only; THE ) | |
| UNITED STATES DEPARTMENT OF ) | |
| JUSTICE; JAMES COMEY, Director of the ) | |
| Federal Bureau of Investigation in his official ) | |
| capacity only; THE FEDERAL BUREAU OF ) | |
| INVESTIGATION; JEH JOHNSON, Secretary ) | |
| of the United States Department of Homeland ) | |
| Security; and THE UNITED STATES ) | |
| DEPARTMENT OF HOMELAND SECURITY, ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Plaintiff Buruji Kashamu, through his undersigned attorneys, submits this Response in Opposition to Defendants' Motion to Dismiss the First Amended Complaint (ECF No. 33, 34), and in support, states as follows.

Plaintiff, a duly elected Senator of the Federal Republic of Nigeria, seeks an order enjoining the defendants, officers and agencies of the United States government, from illegally abducting him in order to transport him to the United States to answer criminal charges pending before this Court, and declaring such conduct to be in violation of the law. Defendants now seek to have this action dismissed by arguing, in contravention of the applicable law and the facts pled in the Amended Complaint: (1) that the United States has in fact sought to lawfully extradite the Plaintiff from Nigeria, an assertion for which the Defendants rely on a mischaracterization of the

1

allegations in the Amended Complaint and a false statement in an internet based news article; (2) that in spite of pleading in detail the information he has received about the planned abduction, and further pleading that since that time it has been unsuccessfully attempted at least once, when he was kept under illegal siege in his residence for six days, Plaintiff's claim does not allege concrete injury and is speculative and implausible; (3) that Plaintiff has not pled a proper claim under the Administrative Procedure Act ("APA"), in spite of the fact that the only relevance of the APA to the present cause of action is its general waiver of sovereign immunity for equitable relief against the United States; (4) that Plaintiff may not seek to enjoin the United States to act in general compliance with the law, in spite of the fact that Plaintiff's request for relief is very specific to compliance with the Mansfield Act's prohibition against "directly effect[ing] an arrest in any foreign country as part of any foreign police action with respect to narcotics control efforts"; (5) that the Mansfield Act is not available as a basis for relief for a private party seeking to prevent its violation on his person, in spite of the fact that no court has so ruled and the legislative history is to the contrary; and (6) that the Declaratory Judgment Act does not provide an independent cause of action, in spite of the fact that Plaintiff only invokes it to seek the type of relief that it provides, and not as an independent cause of action.

The Defendants' Motion should be denied for the reasons stated herein.

## **BACKGROUND**

Plaintiff Buruji Kashamu, ("Senator Kashamu" or "Plaintiff") is a citizen of Nigeria and a democratically elected Senator of that country. (First Amended FAC ("FAC") ¶ 5.) On May 21, 1998, Senator Kashamu's name was introduced into an existing indictment alleging a conspiracy to import and distribute heroin in violation of 21 U.S.C. § 963. That indictment is currently pending in the United States District Court for the Northern District of Illinois. (FAC ¶ 12; *see*

*also* Case No. 94 CR 172.) From approximately 1998, when he was arrested by British authorities pursuant to a request of the United States government, until January 10, 2003, Senator Kashamu was incarcerated in Brixton Prison in London while the United States attempted to have him extradited based on the pending indictment. (FAC ¶ 13.) The courts of the United Kingdom denied two attempts by the United States to have Senator Kashamu extradited, and the United Kingdom ultimately refused to extradite him, finding that Kashamu was not involved in the conspiracy charged in the United States, and that the evidence submitted by the United States against Kashamu was incredible and valueless. (FAC ¶ 14.) When the second extradition proceedings ended on January 10, 2003, Senator Kashamu was released and he thereafter returned to Nigeria. (*Id*.) Since then, Senator Kashamu has unsuccessfully attempted to have the indictment against him dismissed. *See United States v. Kashamu*, 656 F.3d 679 (7th Cir. 2011) and *In re Kashamu*, 769 F.3d 490 (7th Cir. 2014). In its September 15, 2014 opinion regarding the underlying indictment, the Seventh Circuit Court of Appeals stated that the United States had made no effort to extradite Kashamu from Nigeria. *In re Kashamu*, 769 F.3d at 493 (noting that "the government has not tried to extradite Kashamu from Nigeria . . .").

Plaintiff commenced this action on April 9, 2015, seeking to enjoin the defendants from illegally seizing him in Nigeria in order to forcibly take him to the United States. (ECF No. 1.) On or about May 23, 2015, operatives of Nigeria's National Drug Law Enforcement Agency ("NDLEA"), apparently under the direction of two agents of the United States Drug Enforcement Administration ("DEA") or other U.S. agency (referred to herein as "U.S. Agents"), surrounded Senator Kashamu's residence in Lagos, and entered the premises and attempted to seize him pursuant to an illegally issued and invalid provisional warrant. (FAC ¶ 22 and 25.) Senator Kashamu refused to surrender, and demanded that the NDLEA and U.S. Agents cease their

3

illegal efforts. (*Id*.) The NDLEA and U.S. Agents then laid siege to Senator Kashamu's residence, keeping him prisoner in his own home for six days, until a Nigerian federal court ordered them to cease their activities and depart from the premises. (*Id*.) During the six-day detention of Senator Kashamu in his own home, the two U.S. Agents were present immediately outside of his residence, and coordinated and provided instructions to the NDLEA officers with regard to the operation. (FAC ¶¶ 25-27.) After two separate Nigerian federal courts ordered the NDLEA to vacate the premises of Senator Kashamu's residence, the NDLEA and two U.S. Agents finally vacated the premises and the area immediately outside the residence on or about May 28, 2015. (FAC ¶ 30.)

## ARGUMENT

I. **Legal Standard**

In ruling on a motion to dismiss, the court assumes that all the well-pleaded facts alleged in the complaint are true. *Leeb v. Pendrick Capital Partners, LLC*, 891 F. Supp. 2d 1002, 1003-04 (N.D. Ill. 2012) (citing *Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007)). In deciding a motion to dismiss, the court not only assumes that the alleged facts are true, it must draw every reasonable inference in the plaintiff's favor. *Anderson v. Fairman*, No. 95 C 1651, 1996 WL 199748, at *1 (N.D. Ill. Apr. 23, 1996) (citing *Bowman v. City of Franklin,* 980 F.2d 1104, 1107 (7th Cir. 1992)). Under the federal notice pleading standards, to survive a motion to dismiss a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (citation omitted).

## II. Plaintiff Has Established Article III Standing

To establish Article III standing, a plaintiff must show (1) an "injury in fact," (2) a sufficient "causal connection between the injury and the conduct complained of," and (3) a "likel[ihood]" that the injury "will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Article III standing requirements for allegations of future harm "do not uniformly require plaintiffs to demonstrate that it is literally certain that the harms they identify will come about," *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1150 n. 5 (2013), rather, the plaintiff can establish standing based on a "substantial risk" that the harm will occur. *Id*. Further "[a]n allegation of future injury may suffice if the threatened injury is 'certainly impending,' or there is a 'substantial risk' that the harm will occur." *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014) (citations omitted); *see also Remijas v. Neiman Marcus Grp., LLC*, No. 14-3122, 2015 WL 4394814, at *4 (7th Cir. July 20, 2015) (finding that the *Clapper* court "did not jettison the 'substantial risk' standard).

Senator Kashamu has properly alleged both "certainly impeding" harm, and a "substantial risk" of harm. Senator Kashamu's allegations include the following: that beginning in or before October 2014, the United States began to make arrangements with Nigerian officials and powerful political figures in Nigeria to have Kashamu seized without proper legal authority and flown to the United States (FAC ¶ 18); that beginning in or about January 2015, the United States, through officials of the Department of Homeland Security, including an Immigrations and Customs Enforcement Attaché, assigned to the United States Embassy in Senegal, requested a Deputy Inspector General of Police and head of the INTERPOL division in Nigeria, to arrange for the forcible abduction of Senator Kashamu in order to turn him over to United States officials

5

outside of the extradition process (FAC ¶ 19); and that on or about April 1, 2015, a Nigerian political leader confirmed that plans had been made between United States and Nigerian officials to illegally seize Senator Kashamu and to transport him to the United States without proper and valid legal process. (FAC ¶ 20.)

Senator Kashamu has further alleged that after he filed this lawsuit, two agents or officers of the United States took part in and directed an illegal siege of his residence from May 23, 2015 to May 28, 2015 in an effort to directly effect his unlawful arrest or seizure outside of the extradition process and in violation of Nigerian law. (FAC ¶¶ 22-30.)  In other words, Senator Kashamu first alleged (in the originally filed Complaint) that he reasonably feared that agents of the United States were planning to illegally seize, or kidnap him, and that after he so alleged the plan was attempted and failed. He has further alleged that the Defendants, through one or more of their employees, "continue to conspire with the Nigerian police officials to directly abduct Kashamu." (FAC ¶ 32.)

The Government in its Motion to Dismiss seems to confuse the allegations against the United States Defendants as they relate to the invalidated warrant: the fact that Senator Kashamu alleges the existence of an illegal warrant does not deprive him of standing to bring a claim against Defendants for "directly effect[ing] an arrest in a[] foreign country as part of a[] foreign police action with respect to narcotics control efforts." 22 U.S.C. § 2291(c).  Senator Kashamu has alleged – and the federal court of Nigeria has found - that the warrant used by the Nigerian authorities during the siege of his residence was illegal, invalid, and outside the extradition process, and thus, the Defendants' role in the illegal siege shows a substantial risk of United States officials directly effecting his arrest of the extradition process. (FAC ¶¶ 31-34; 39, 41.) These allegations are sufficient for purposes of standing.

Further, it is not necessary that Senator Kashamu allege that a further attempt has been made to abduct him *since* June 8, 2015 in order to properly allege that the harm he faces is either "certainly impending" or will occur with "substantial risk." Prior to the attempted abduction, he filed this lawsuit and alleged that the Defendants were planning to effect his illegal seizure and removal to the United States. Since then, the illegal conduct feared by Senator Kashamu seems to have indeed been attempted, and there is every reason to believe that it will be tried again.[1] Thus, the harm alleged is based on Senator Kashamu's *status* as an individual subject to an indictment and *presently* sought by the United States, and not dependent on some future speculative act. See *Susan B. Anthony List*, 134 S. Ct. at 2342-43 (citing *Steffel v. Thompson,* 415 U.S. 452, 459 (1979) (finding sufficiently imminent injury where risk of enforcement was not "chimerical"); *Babbitt v. Farm Workers,* 442 U.S. 289, 302 (1979) (finding sufficiently imminent injury where fear of prosecution was not "imaginary or wholly speculative"); *Virginia v. American Booksellers Ass'n Inc.,* 484 U.S. 383, 393 (1988) (finding sufficiently imminent injury where fear of prosecution was "well-founded"); *Holder v. Humanitarian Law Project,* 561 U.S. 1, 15 (2010) (finding sufficiently imminent injury where fear of prosecution was "credible")); *see also Moyer v. Michaels Stores, Inc.*, No. 14 C 561, 2014 WL 3511500, at *5 (N.D. Ill. July 14, 2014).

Accordingly, the harm alleged by Plaintiff is not speculative, and is sufficient for purposes of standing to seek injunctive and declaratory relief.

---

[1] To the extent that the Defendants assert that the rulings of the Nigerian courts have obviated Senator Kashamu's legitimate fear that he will be illegally abducted, the opposite would seem to be true. It appears that the U.S Agents and the NDLEA were caught engaging in an illegal abduction attempt, and the NDLEA was ordered to cease its participation. The rulings of the Nigerian courts do not bind the Defendants, but may effectively foreclose lawful and proper extradition proceedings. The fact that the United States government agents or officials were apparently willing to violate both Nigerian and United States law to seize Senator Kashamu, especially when combined with the possible foreclosure of lawfully compliant extradition, shows if anything, a likelihood of recurrence, and not a lack thereof.

A. <u>Defendants' Assertion that the United States Has Formally Requested Senator Kashamu's Extradition From Nigeria is Unfounded</u>

Defendants further attempt to challenge Senator Kashamu's standing by asserting, contrary to Plaintiff's allegations, without any proper evidentiary basis, and apparently contrary to the true facts, that the United States *has* formally sought his lawful extradition from Nigeria. This assertion should be ignored.

First, the Court cannot properly take judicial notice on a motion to dismiss of a purported fact asserted in an internet based news medium. A court may only take judicial notice of facts that are "(1) not subject to reasonable dispute and (2) either generally known within the territorial jurisdiction or capable of accurate and ready determination through sources whose accuracy cannot be questioned." FRE 201(b); *Ennenga v. Starns*, 677 F.3d 766, 773-74 (7th Cir. 2012) (citing *Gen. Elec. Capital Corp. v. Lease Resolution Corp.,* 128 F.3d 1074, 1081 (7th Cir. 1997)). Here, not only is the fact of whether the United States has properly requested lawful extradition in dispute, but the accuracy of the purported facts contained in the article relied upon by Defendants cannot be established. If Defendants' assertion is true, the Defendants would presumably be in possession of any number of primary sources of information (proper under the Federal Rules of Evidence) in support of the proposition that a proper and lawful extradition request was made by the government of the United States to the government of Nigeria. They have presented none. On September 15, 2014, the Seventh Circuit found that the Defendants have made no attempt to extradite Plaintiff. Defendants cannot counter a fact that must be taken as true for purposes of a motion to dismiss by tendering a single, inadmissible internet new account. To the extent the Defendants wish to raise a dispute of fact, the proper vehicle is not a motion to dismiss, and the proper basis is not an unsubstantiated and inadmissible news story. Furthermore, as alleged, a Nigerian court expressing its opinion on the processes filed by the

8

Nigerian Attorney General found that the processes filed were an abuse of court process and incompetent to commence extradition proceedings. (FAC ¶ 31.)

Second, Plaintiff's allegation that a Nigerian court has ordered that Nigerian law enforcement officials refrain from taking part in "*any*" extradition proceeding against Senator Kashamu does not, as the Defendants argue, mean that Plaintiff has conceded that a proper extradition request *currently* exists, or that one ever existed. The mere mention of the term "extradition" by either Nigerian officials or its court does not mean a formal and legal extradition process is underway. Further, the fact that the Nigerian courts seem to have barred Nigerian authorities from engaging in formal extradition or cooperating with the United States to extradite Senator Kashamu, only provides further support that Senator Kashamu has properly alleged a sufficient risk of a certainly imminent *illegal*—(that is, outside the extradition process)—abduction.

Third, as attested to in the attached declaration of one of Sen. Kashamu's Nigerian attorneys, Prince R. Ajibola Oluyede, the application filed in Nigeria which led to the issuance of the illegal and invalid warrant did *not* include a request from the government of the United States for his arrest and/or extradition, and proper extradition proceedings were not thereafter requested. (Ex. A; Oluyede Declaration.)[2] The Nigerian Extradition Act (a copy of which was attached as Exhibit 4 to ECF No.7) prescribes that an Extradition Request must be in the form of a written request addressed to the Nigerian Federal Attorney General, signed by a diplomatic or consular officer in the mission in Nigeria of the requesting country. *See* Laws of the Federal

---

[2] Plaintiff attaches the declaration of his Nigerian attorney solely for the purpose of showing the Court that the internet new story provided by Defendants in support of their Motion to Dismiss is not only of no evidentiary value, but also to illustrate the facts that Plaintiff expects to be able to prove. Factual material used by a plaintiff to respond to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for such illustrative purposes does not convert the pending motion into a Rule 56 motion. *See e.g. Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012).

Republic of Nigeria, Extradition Act, no. 87 (1966). The same process is required by Articles 15 and 8 of the Extradition Treaty. (See ECF No. 7 at Ex. 3.) No such request was filed or produced in the Nigerian legal proceedings. (Ex. A. Oluyede Declaration).

Accordingly, Defendants' assertion that a legally compliant extradition has been requested is unsupported, and should be ignored.

### III. Plaintiff's First Amended Complaint States a Claim Upon Which Relief Can Be Granted

Senator Kashamu has properly stated a claim upon which relief can be granted under *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Neither *Twombly* nor *Iqbal* requires a plaintiff to prove his case in the complaint, nor do they impose a summary judgment-like standard to be applied at the pleading stage. Indeed, though these cases require a plaintiff's claims to be plausible, they 'do[ ] not impose a probability requirement at the pleading stage.'" *In Re: Text Messaging Antitrust Litig.*, No. 08 C 7082, 2010 WL 1782006, at *4 (N.D. Ill. Apr. 30, 2010) *aff'd sub nom. In re Text Messaging Antitrust Litig.*, 630 F.3d 622 (7th Cir. 2010) (citing *Twombly,* 550 U.S. at 556).

Plaintiff has met that requirement here for the same reasons he has not pled a "speculative" claim for purposes of standing discussed above. Plaintiff specifically alleges that beginning in or before October 2014, the United States began to make arrangements with Nigerian officials and powerful political figures in Nigeria to have him seized without proper legal authority and flown to the United States (FAC ¶ 18); that beginning in or about January 2015, the United States, through officials of the Department of Homeland Security requested a Deputy Inspector General of Police and head of the INTERPOL division in Nigeria to arrange for the forcible abduction of Senator Kashamu in order to turn him over to United States officials outside of the extradition process (FAC ¶ 19); and that on or about April 1, 2015, a Nigerian

10

political leader confirmed that plans had been made between United States and Nigerian officials to illegally seize Senator Kashamu and to transport him to the United States without proper and valid legal process. (FAC ¶ 20.)

Further, Plaintiff has pled that the May siege of his residence was illegal and outside the extradition process, and that individuals believed to be U.S. Government officials took part in and directed this illegal conduct. (FAC ¶¶ 22-30.) Defendants' assertion that there is an "obvious alternative explanation" for their conduct (i.e., *a lawful* extradition proceeding) is belied by the plausible allegations in the First Amended Complaint, namely that there has not been a proper extradition request made and that the May events, and the Defendants' role in those events, was outside of the formal extradition process.[3] As the Seventh Circuit has stated, neither *Iqbal* or *Twombly* "questions the ongoing validity of Rule 8(a)(2) . . . that a complaint include 'a short and plain statement of the claim showing that the pleader is entitled to relief.' To meet this standard, a plaintiff is not required to include 'detailed factual allegations.'" *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013) (citations omitted).

### IV. Plaintiff Does Not Bring a Claim Under the APA, and Such a Claim is Not Required For a Waiver of Sovereign Immunity to Apply

Defendants also make a completely irrelevant observation that Senator Kashamu has not stated a claim pursuant to the Administrative Procedures Act ("APA"). Plaintiff has not sought to do so, and Defendants are incorrect that Senator Kashamu must actually bring a claim under the APA in order to assert a claim of equitable relief against the United States or its agencies or officers. Section 702 of the APA, 5 U.S.C. § 702, provides the relevant *waiver* of sovereign immunity for Plaintiff's non-monetary claims, not the basis for jurisdiction. *See Willis v. United States*, 787 F.2d 1089, 1093 (7th Cir. 1986) ("[A]lthough sovereign immunity is waived pursuant

---

[3] As noted above, Defendants' assertion also appears to be factually incorrect. *See* Ex. A (Oluyede Affidavit).

to section 702, Willis's claims rest on his rights under the fourth and fifth amendment, and subject matter jurisdiction arises from 28 U.S.C. § 1331, the general federal question jurisdiction.").

Further, Plaintiff need not allege a final agency action or otherwise state a claim under the APA in order to proceed with a claim for non-monetary relief. The waiver of sovereign immunity in Section 702 of the APA is a law of general application. *See Blagojevich v. Gates*, 519 F.3d 370, 372 (7th Cir. 2008) ("[T]he fact remains that § 702 is a law of general application."); *see also Delano Farms Co. v. California Table Grape Comm'n*, 655 F.3d 1337, 1344 (Fed. Cir. 2011) ("We hold that section 702 of the APA waives sovereign immunity for non-monetary claims against federal agencies . . . It is not limited to "agency action" or "final agency action . . . "); *Scheuneman v. United States*, No. 07-2020, 2007 WL 3256593, at *4 (C.D. Ill. Aug. 28, 2007) *report and recommendation adopted*, No. 07-2020, 2007 WL 2772574 (C.D. Ill. Sept. 18, 2007) ("Section 702's waiver of sovereign immunity is not limited to the technical definition of "agency action"; instead, it extends to all official misconduct by the agency.") (citation omitted).

Thus, the fact that the First Amended Complaint does not allege an APA violation is irrelevant, and not a basis for dismissal.

## V. Plaintiff Is Entitled to Injunctive Relief

Plaintiff is entitled to the injunctive relief sought in his First Amended Complaint. First, Plaintiff is not seeking a broad general injunction for Defendants to simply obey the law. Plaintiff is seeking an injunction barring specific conduct, namely that Defendants cease all efforts to abduct Senator Kashamu from Nigeria or any other country for purposes of transporting him to the United States. (FAC at ¶ 8.) Fed. R. Civ. P 65(d) only requires that

injunctions be stated specifically and "describe in reasonable detail . . . the act or acts restrained or required." The injunction sought by Plaintiff fulfills this requirement, and does not contain broad language requiring general compliance with a broad statute. *Cf. Solis v. Seher*, No. 3:12-CV-415 JD, 2013 WL 393291, at *3 (N.D. Ind. Jan. 31, 2013) (finding proposed injunction overbroad where Plaintiff "asked the Court to permanently enjoin Seher 'from violating the provisions of Title I of ERISA'"). Further, the rationale for courts' reluctance to grant broad injunctions to generally obey a law does not apply in this case. As the Supreme Court has explained, "the mere fact that a court has found that a defendant has committed an act in violation of a statute does not justify an injunction broadly to obey the statute and thus subject the defendant to contempt proceedings if he shall at any time in the future commit some new violation *unlike and unrelated to that with which he was originally charged*." *NLRB v. Express Pub. Co.,* 312 U.S. 426, 435–37, 61 S.Ct. 693, 85 L.Ed. 930 (1941) (emphasis added); *see also Lineback v. Spurlino Materials, LLC*, 546 F.3d 491, 504 (7th Cir. 2008). Here, Plaintiff seeks an injunction barring specific conduct that is in fact related to the Defendants' past actions, and would not lead to contempt proceedings for wholly unrelated activity.

Second, Defendants rely on irrelevant cases for their argument that the Mansfield Act, 22 U.S.C. § 2291(c)(1), does not provide Plaintiff with a right to prospective injunctive relief. Those cases are limited to situations in which a criminal defendant seeks suppression or dismissal of an indictment as a remedy for a violation of the Act, not where prospective relief is sought. *See United States v. Zabaneh*, 837 F.2d 1249, 1261 (5th Cir. 1988) (seeking dismissal on jurisdictional grounds); *United States v. Yaroshenko*, No. 09-CR-524, 2015 WL 3400805, at *2 (S.D.N.Y. May 21, 2015) (seeking dismissal of indictment); *United States v. Bourdet*, 477 F. Supp. 2d 164, 173 (D.D.C. 2007) (motion to suppress). This is because "[d]ismissal of an

indictment . . . is an 'extreme and drastic sanction,'" with special considerations as to the proper remedy. *United States v. Stein,* 495 F.Supp.2d 390, 319 (S.D.N.Y.2007) (citations omitted); *see also United States v. Childs,* 447 F.3d 541, 545 (7th Cir. 2006) (stating that "we have never taken what we see to be an extreme step of dismissing criminal charges against a defendant because of government misconduct."). Such considerations are not at issue when dealing with prospective relief of the nature Plaintiff seeks.

Section 2291(c)(1) prohibits officers and employees of the United States from "directly effect[ing] an arrest in any foreign country as part of any foreign police action with respect to narcotics control efforts." The plain meaning is indisputable: Defendants do not have the authority to participate in efforts to seize Senator Kashamu in Nigeria, other than through the legally provided process of extradition. This plain meaning is also strongly reinforced by the Amendment's legislative history. The Senate Foreign Relations Committee Report stated that "[i]t is the Committee's intent that 'police action,' as used in this provision is meant to prohibit U.S. narcotics agents abroad from engaging in actions involving the use of force *and actions involving the arrest of foreign nationals – whether unilaterally (acting on their own)* or as members of teams involving agents or officials of other foreign governments." *Internal Security Assistance & Arms Control Act*, S. 2662, 94th Cong., § 55 (2d Sess. 1976) (emphasis added). The legislative history further indicates that Congress intended a private cause of action for prospective injunctive relief. *See, e.g., Edelson v. Ch'ien*, 405 F.3d 620, 631 (7th Cir. 2005) ("[I]n determining whether to recognize an implied cause of action under a specific act of Congress, we have identified our inquiry as "whether Congress intended an implied right of action ... in light of the statute's language, structure, and legislative history."). Here, the expression of legislative intent establishes that Congress intended to protect foreign nationals

from overreaching conduct on the part of United States narcotics agents. Absent the right on the part of foreign nationals like Senator Kashamu to seek court intervention to require compliance with this law, its provisions would be effectively nullified since the only other party with standing to enforce the law would be the federal government, the alleged violator of the law. *See TRW, Inc. v. Andrews,* 534 U.S. 19, 31, 122 S.Ct. 441, 151 L.Ed.2d 339 (2001) (court must give meaning to each word in a statute and, if possible, not construe a statute so as to render some words or phrases meaningless or superfluous).

### VI. Plaintiff is Entitled to Declaratory Relief

Contrary to Defendants' contentions, Plaintiff does not seek an independent action under the Declaratory Judgment Act, but a declaration that any effort to abduct Senator Kashamu from Nigeria or any other country for purposes of transporting him to the United States is in violation of the laws of the United States, namely 22 U.S.C. § 2291(c). Plaintiff is entitled to such relief.

### CONCLUSION

For the foregoing reasons, the Court should deny Defendants' Motion to Dismiss Plaintiff's First Amended Complaint.

Respectfully submitted,

/s/ Matthew J. Piers
One of Plaintiff's Attorneys

Robert R. Cohen, ARDC No. 6193698
rcohen@frankelandcohen.com
Scott J. Frankel, ARDC No. 6195429
sfrankel@frankelandcohen.com
Frankel & Cohen
53 W. Jackson Blvd., Suite 1615
Chicago, Illinois 60604
(312) 759-9600

Matthew J. Piers, ARDC No. 2206161
mpiers@hsplegal.com
Chirag Gopal Badlani, ARDC No. 6308523
cbadlani@hsplegal.com
Hughes, Socol, Piers, Resnick
  & Dym, Ltd.
70 West Madison Street, Suite 4000
Chicago, IL 60602
(312) 580-0100

Date: September 10, 2015

## CERTIFICATE OF SERVICE

  I, Matthew J. Piers, an attorney, certify that a copy of the attached Response in Opposition to Defendants' Motion to Dismiss the First Amended Complaint on all counsel who have appeared in this matter by electronic filing on September 10, 2015.

                  /s/ Matthew J. Piers