CERTIFIED COPY
A True Copy
Teste:

Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

In the

# United States Court of Appeals

## For the Seventh Circuit

No. 16-1004

BURUJI KASHAMU,

         *Plaintiff-Appellant*,

v.

U.S. DEPARTMENT OF JUSTICE, *et al.*,

         *Defendants-Appellees*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 15 CV 3159 — **Charles R. Norgle**, *Judge*.

SUBMITTED NOVEMBER 18, 2016 — DECIDED JANUARY 23, 2017

Before POSNER and KANNE, *Circuit Judges*.

POSNER, *Circuit Judge*. Buruji Kashamu, a fugitive for nearly two decades and the alleged leader of a heroin-importing conspiracy that inspired the hit show "Orange is the New Black," appears before us for a third time not in person but through counsel because he is unwilling to risk being present in the United States, and in fact has never in his life been in the United States. See "Man Who Inspired Orange is the New Black Elected Senator in Nigeria" *The*

Case: 1:15-cv-03159 Document #: 57 Filed: 03/17/17 Page 2 of 5 PageID #:318
Case: 16-1004      Document: 00712958029      Filed: 03/17/2017      Pages: 5

2                                                                  No. 16-1004

*Guardian*, Apr. 16, 2015, https://www.theguardian.com/world/2015/apr/16/alleged-drug-kingpin-wanted-us-elected-senator-nigeria (visited Jan. 20, 2017).

In 1998 a grand jury in the Northern District of Illinois had charged him and thirteen others with conspiracy to import heroin, in violation of 21 U.S.C. § 963. Eleven co-conspirators pleaded guilty, and one other was convicted after trial. But Kashamu, refusing to appear (which would have required his presence in the United States), insisted that the authorities were trying to pin crimes committed by his dead brother—who he said bore a striking resemblance to him—on him.

The present suit is Kashamu's latest attempt to avoid answering the still-pending charges that the Justice Department has brought against him. When he surfaced in England six months after his indictment Justice Department lawyers commenced what turned out to be a four-year legal battle seeking his extradition to the United States—unsuccessfully. Later Kashamu moved to dismiss the American indictment on the ground that the doctrine of collateral estoppel barred his prosecution by the United States. We denied that motion, explaining that the English magistrate's refusal to authorize his extradition to the United States had been based simply on the Justice Department's inability to convince the judge that the person it was seeking to extradite was indeed Kashamu. *United States v. Kashamu*, 656 F.3d 679 (7th Cir. 2011). Because the magistrate had not ruled on Kashamu's guilt or innocence of the U.S. charges, the refusal to extradite him did not preclude further efforts to prosecute him. *Id.* at 688.

Case: 1:15-cv-03159 Document #: 57 Filed: 03/17/17 Page 3 of 5 PageID #:319
Case: 16-1004    Document: 00712958029    Filed: 03/17/2017    Pages: 5

No. 16-1004 3

Three years later Kashamu again appeared before the court, this time petitioning for a writ of mandamus to dismiss the indictment on speedy-trial grounds. Again we turned him down, this time on the ground that he had forfeited any speedy-trial right by remaining a fugitive, and noting that if "he wants to fight the charges, he has only to fly from Lagos to Chicago." *In re Kashamu*, 769 F.3d 490, 494 (7th Cir. 2014).

Rather than do that, Kashamu devised a new strategy. He filed suit in the district court in Chicago in April 2015—one month after his election to the Nigerian Senate—asking the court to "enjoin his abduction abroad by U.S. authorities." He claimed to have been tipped off that U.S. authorities, colluding with his political rivals, were planning to abduct him in Nigeria and drag him to Chicago to stand trial before he could be sworn into office as a Nigerian senator. He relied on a provision of the Mansfield Amendment, 22 U.S.C. § 2291(c)(1), that states that "no officer or employee of the United States may directly effect an arrest in any foreign country as part of any foreign police action with respect to narcotics control efforts."

A month after filing the suit, Kashamu amended the complaint to allege that his fear of abduction had nearly come true: agents of Nigeria's National Drug Law Enforcement Agency, along with two white men who Kashamu reasons must have been operatives of the United States Drug Enforcement Administration, surrounded his Lagos residence and tried to arrest him on an "invalid provisional warrant." But, the complaint continues, he "refused to surrender," and so the agents "laid siege … keeping him prisoner in his own home for six days, until a Nigerian federal

Case: 1:15-cv-03159 Document #: 57 Filed: 03/17/17 Page 4 of 5 PageID #:320
Case: 16-1004     Document: 00712958029     Filed: 03/17/2017     Pages: 5

4    No. 16-1004

court ordered them to cease their activities and depart from the premises." He speculates that U.S. agents directed and coordinated the entire affair, and that U.S. authorities still are trying to extradite him. In the absence of injunctive relief, he maintains, he is vulnerable to "a very real threat of abduction by U.S. authorities."

The district court dismissed Kashamu's complaint on the ground that the Mansfield Amendment does not create a private right of action. Although the statute forbids federal employees to arrest a person in a foreign country on narcotics charges, the Supreme Court has repeatedly construed statutes similar to the Mansfield Amendment as directives to federal agencies and their employees (i.e., "behave yourselves," or face disciplinary action) rather than "as a conferral of the right to sue" the agencies and their employees. See, e.g., *Armstrong v. Exceptional Child Center,* 135 S. Ct. 1378, 1387 (2015); *Alexander v. Sandoval,* 532 U.S. 275 (2001); *Thompson v. Thompson,* 484 U.S. 174 (1981); *California v. Sierra Club,* 451 U.S. 287 (1981).

Kashamu's suit further lacks merit because it confuses an attempt by U.S. government agents to arrest him on a provisional warrant (a first step toward possible extradition) in coordination with local law enforcement, with an attempted abduction. The Mansfield Amendment is explicit in *not* prohibiting an employee of the United States, provided he has the approval of the United States chief of mission, from "being present when foreign officers are effecting an arrest or from assisting foreign officers who are effecting an arrest." 22 U.S.C. § 2291(c)(2). The conduct of which Kashamu complains—that U.S. agents actively participated in an attempt by *Nigerian* agents to arrest him—was thus lawful.

Case: 1:15-cv-03159 Document #: 57 Filed: 03/17/17 Page 5 of 5 PageID #:321
Case: 16-1004     Document: 00712958029     Filed: 03/17/2017     Pages: 5

For all these reasons, the decision of the district court is

AFFIRMED.

Case: 1:15-cv-03159 Document #: 57 Filed: 03/17/17 Page 5 of 5 PageID #:321
Case: 16-1004     Document: 00712958029     Filed: 03/17/2017     Pages: 5